**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Mark D. Boyko | ) | |
| | ) | **ORDER GRANTING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION TO DISMISS** |
| | ) | |
| vs. | ) | |
| | ) | |
| Elizabeth A. Robinson, | ) | |
| | ) | Case No. 4:07-cv-035 |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is the Defendant's "Motion to Dismiss" filed on June 1, 2007. The Plaintiff filed a response in opposition to the motion on June 20, 2007, and the Defendant filed a reply on July 2, 2007. For the reasons outlined below, the motion to dismiss is granted.

I.   **BACKGROUND**

The plaintiff, Mark D. Boyko, is a citizen of the State of North Dakota. The defendant, Elizabeth Robinson, is a citizen of the State of Colorado. See Docket 1-1. In 2002, Boyko and Robinson met on an internet dating website and subsequently chatted via email until December 11, 2003. See Docket 6-1. Robinson contends that when they began chatting she believed Boyko lived in Montana, although she knew he was originally from North Dakota. See Docket 6-1, 19. Boyko contends that he lived in North Dakota when he and Robinson began chatting online. See Docket

10.[1]  Boyko alleges that the summer before he moved to Colorado, he lived in Jamestown, North Dakota and exchanged emails with Robinson in that location.  Id.

In 2003, Boyko informed Robinson that he had moved to Colorado to attend school.  See Docket 6-1.  He attended Colorado State University for one semester and left to pursue veterinary school at the University of Minnesota.  See Docket 10.  In October 2003, Boyko and Robinson met in Highlands Ranch, Colorado.  See Docket 6-1.  After the date, Robinson informed Boyko that she did not want to pursue a relationship.  Id.

On December 9, 2003,[2] Boyko sent an email to Robinson's acquaintances alleging that Robinson used drugs and evaded taxes.  See Docket 6-4.  Boyko also stated in the same email that he was an "er33t email hax0r" which, as he later stated in an reply email, means an elite hacker.  See Docket 6-5.

On December 11, 2003, Robinson contacted the Douglas County Sheriff's Department and filed for a permanent civil protection order.  See Docket 6-1.  On December 11, 2003, the court entered a temporary restraining order against Boyko.  On December 26, 2003, the temporary order became permanent.

On or about February 9, 2004, Boyko was arrested in Fargo, North Dakota, on an out-of-state warrant from Colorado.  See Docket 1-1.  At that time, approximately $5,000 of computer equipment was seized.  Boyko spent four days in jail and, over the next year and a half, was required

---

[1] The plaintiff's facts are derived from a "Corrections and Commentary Regardings Statements of Material Facts," a Response to the motion to dismiss, and the complaint.  Boyko submitted one affidavit with an amended response to the motion to dismiss, which was challenged with a motion to strike.  Because the Court does not find personal jurisdiction, it will not address the Motion to Strike.  The information in the affidavit does not provide additional information that will assist the Court in the personal jurisdiction analysis because the information necessary in the Court's analysis is already cited in the aforementioned documents.

[2] The date in question has the years 2003, 2005, and 2006 in different documents submitted to the Court.  However, the date on the document received by the Douglas County Court Office is 2003.  See Docket 6-6.

to make several trips to Colorado for appearances in court hearings. Boyko was charged with a felony, but the charge was voluntarily dismissed by the prosecutor in Colorado on May 10, 2005. Id. In the complaint, Boyko claims that, but for the false claims made by Elizabeth Robinson to the Colorado police and district attorney, no action would have been taken.

On April 23, 2007, Boyko filed a complaint against Robinson alleging defamation of character, malicious prosecution, and intentional infliction of emotional distress and requested $450,000 in compensatory damages, $50,000 in punitive damages, reasonable attorney's fees, and court costs. See Docket 1-1. On June 1, 2007, Robinson filed a motion to dismiss. On June 20, 2007, the plaintiff filed a response in opposition to the motion and on July 2, 2007, the defendant filed a reply brief. See Docket 20, 17.

## II. LEGAL DISCUSSION

### A. PERSONAL JURISDICTION

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citing Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990); Watlow Elec. Mfg. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d 642, 647 (citations omitted).

This action is in federal court based on diversity jurisdiction. See 28 U.S.C. § 1332(a). Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court in a diversity action will have personal jurisdiction to the same extent as a state court of the state in which that federal district court sits. Dean v. Oibas, 129 F.3d 1001, 1003 (8th Cir. 1997). Therefore, when a federal court sits in diversity, the analysis for personal jurisdiction involves two steps: (1) the court must determine whether the State of North Dakota would accept jurisdiction under the facts of this case; and (2) the court must determine whether the exercise of jurisdiction comports with constitutional due process restrictions. Lakin v. Prudential Securities, Inc., 348 F.3d 704, 706-707 (8th Cir. 2003) (citing Sondergard v. Miles, Inc., 985 F.2d 1389, 1392 (8th Cir. 1993)). To satisfy the first step of the jurisdictional analysis, the Court will address the relevant North Dakota provisions governing personal jurisdiction over non-resident defendants.

The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process . . . ." Hansen v. Scott, 645 N.W.2d 223, 230 (N.D. 2003) (citing Auction Effertz, Ltd. v. Schecher, 611 N.W.2d 173 (N.D. 2000); Hust v. Northern Log, Inc., 297 N.W.2d 429, 431 (N.D. 1980)). The Eighth Circuit has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the two-step test collapses into a single question of whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Oriental Trading Co, Inc. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994); see Hansen v. Scott, 645 N.W.2d 223, 232

4

(N.D. 2002) (recognizing that a federal court sitting in diversity may collapse the two-step framework under North Dakota law).

"Due process requires minimum contacts between [a] non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004) (citing Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum, general and specific. With respect to general jurisdiction over a defendant, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." Dever, 380 F.3d 1070, 1073 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)). A state has specific jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state. Johnson v. Woodcock, 444 F.3d 953 (8th Cir. 2006) (citing Helicopteros, 466 U.S. 408, 414).

Both categories of minimum contacts require some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. If a court determines that a defendant has minimum contacts with the forum state, the court must then consider "'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

The Eighth Circuit has established a five-part test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant: (1) the nature and quality of a defendant's contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Dever, 380 F.3d 1070, 1073-74 (citing Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). The Eighth Circuit affords "significant weight" to the first three factors. Romak USA, Inc. V. Rich, 384 F. 3d 979, 984 (8th Cir. 2004) (citing Dever, 380 F.3d 1070, 1073-74). The Eighth Circuit's five-part test "essentially blends" the tests for general and specific jurisdiction. 1 Litigation of International Disputes in U.S. Courts § 1:4. Specific and General Jursidiction (Sept. 2006).

Robinson contends that this Court does not have personal jurisdiction over her. Robinson has never visited North Dakota or, to her knowledge, communicated with any person living, or entity residing, in North Dakota. Boyko argues that Robinson's business website and contacts with Boyko confer jurisdiction. The Court will analyze each of Robinson's contacts in relation to the claims being asserted and the factors prescribed by the Eighth Circuit.

1.   NATURE AND QUALITY OF CONTACTS

In examining the nature and quality of the contacts, the primary issue is whether the non-resident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereignty." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir. 1993) (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). The contact(s) with the forum state must be more than "random, fortuitous, or attenuated." Id. The contact(s) must not be the result of "unilateral activity of another party or a third person." Id. The Court will examine the nature and quality of the contacts through the Plaintiff's arguments that 1) Robinson's business website is available and directs its activities toward North Dakota residents; 2) Robinson knew that the "brunt of the injury" of the allegedly tortious acts would be felt in North Dakota; and 3) Robinson's contacts with Boyko through email confer personal jurisdiction.

a.   ROBINSON'S BUSINESS WEBSITE

In Lakin v. Prudential Securities, Inc., 348 F.3d 704 (8th Cir. 2003), the Eighth Circuit discussed whether and how a Web site could provide minimum contacts to invoke personal jurisdiction. The Court recognized that a majority of courts which have addressed the issue have adopted the analytical framework set forth in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The Eighth Circuit quoted Zippo and stated "that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Lakin, 348 F.3d 704, 710

(quoting Zippo, 952 F.Supp. 1119, 1124).  The federal court in Zippo created a "sliding scale" test to measure the nature and quality of the commercial contacts for assessing the exercise of personal jurisdiction.  The Eighth Circuit restated a portion of the Zippo court's holding that described the "sliding scale" concept:

> At one end of the spectrum are situations where the defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Lakin, 348 F.3d 704, 710-11 (quoting Zippo, 952 F.Supp. 1119, 1124).  The Eighth Circuit concluded that the "sliding scale" approach was appropriate in cases of specific jurisdiction.[3]

Boyko argues that the Court should find personal jurisdiction because Robinson's business website (http://www.volumpr.com) is accessible by North Dakota residents and the website directs its activities toward North Dakota residents because it can be found as a sponsored link on an "area guide" for Grand Forks, North Dakota.  See Docket 20.  Robinson contends that the website is minimally interactive because it only contains email hyperlinks and hyperlinks to business clients'

---

[3] The holding in Lakin marked the addition of the Eighth Circuit to a growing number of Circuit Courts of Appeal that have adopted either the same or a similar standard as articulated in Zippo for purposes of specific jurisdiction.  See Lakin v. Prudential Securities, Inc., 348 F.3d 704 (8th Cir. 2003); Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir.2003); Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002); ALS Scan, Inc. v. Digital Serv. Consult., Inc., 293 F.3d 707 (4th Cir.2002); Young v. New Haven Advocate, 315 F.3d 256 (4th Cir. 2002); Gorman v. Ameritrade Holding Corp., 293 F.3d 506 (D.C. Cir. 2002); GTE New Media Serv. Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000); Soma Medical Intern. v. Standard Chartered Bank, 196 F.3d 1292 (10th Cir. 1999); Mink v. AAAA Development LLC, 190 F.3d 333 (5th Cir. 1999); Bensusan Rest. Corp. v. King, 126 F.3d 25 (2d Cir.1997); Cybersell, Inc., v. Cybersell, Inc., 130 F.3d 414 (9th Cir.1997); CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996).

websites. See Docket 19. Moreover, Robinson argues that even if the business website did confer jurisdiction, it would give the Court jurisdiction over the business, not Robinson, who is a principal for the business. See Docket 17-1.

Under the Zippo sliding scale test, the business website falls into the either the passive or middle category of the sliding scale. The website could be categorized as passive because VolumePR's primary purpose is to provide information about its business and its clients on the website. However, a user may communicate with the business by clicking on "Joining Our Team" or "Contact Us" hyperlinks to send email, which may move it into the middle category. This Court found in Atkinson v. McLaughlin that an e-mail hyperlink does not, in and of itself, render a Web site interactive for the purposes of finding jurisdiction. 343 F. Supp. 2d 868, 874 (D.N.D. 2004). Further, even if the website is categorized in the middle category, the Court must consider the level of interactivity and the commercial nature of the website. Lakin, 348 F.3d 704, 711. The information exchanged on the VolumePR website is not commercial in nature; one cannot buy, sell, or conduct any transaction on the website. Therefore, the website alone is not sufficient to confer personal jurisdiction over Robinson.

The Court also rejects Boyko's argument that because the website is found as a sponsored link on a website for a North Dakota "area guide," it constitutes advertising and business in the forum state. In her affidavit, Robinson testifies that neither she nor VolumePR website communicated with http://www.areaguides.com; nor did they grant it permission to use their name on its website. Even if the business did contract to place a sponsored hyperlink as Boyko contends, national advertising, in and of itself, arguably does not confer personal jurisdiction. Singletary v. B.R.X., Inc., 828 F.2d 1135, 1136 (5th Cir. 1987); see also Gardemal v. Westin Hotel Co., 186 F.3d

588 ( 5th Cir. 1999) (finding no general jurisdiction existed over a hotel which advertized in several magazines and newspapers in forum state and contracts with many businesses in forum state). Further, the Court finds that VolumePR website did not derive any business from its advertising in the forum state. See e.g., Williams v. Bowman Livestock Equipment Co., 927 F.2d 1128, 1131 (10th Cir. 1991) (finding no basis for determining minimum contacts when the record did not indicate the extent of advertising or the business derived from it); Mesalic v. Fiberfloat Corp., 897 F.2d 696, 700 n. 10 (3d Cir. 1990) (national advertisements and marketing strategies are at best, tangential support for personal jurisdiction); Singletary v. B.R.X., Inc., 828 F.2d 1135, 1136-67 (5th Cir. 1987) (no evidence that the claim arose out of or was related to advertisements in the forum state). Nothing in the record indicates that the VolumePR website has ever communicated with or derived any business from North Dakota entities. As a result, the Court finds that the business website itself does not constitute a minimum contact with North Dakota.

Even if the website did confer jurisdiction, it would not automatically confer personal jurisdiction over Robinson. Neither Boyko nor Robinson have cited to any case law that would establish VolumePR's contacts as those of Robinson. The concept of a "fiduciary shield" or "corporate shield" has been accepted in some jurisdictions to protect individuals from imputing the contacts of their employers. However, North Dakota courts have rejected the shield in at least one instance. Drayton Grain Processors v. NE Foods, Inc. No. 3:05-cv-73, 2007 WL 983825 at *1 (D.N.D. Mar. 20, 2007) (holding that because "N.D. R. Civ. P. 4(b)(2) provides for jurisdiction over a defendant whose contact with the state is based on "acting as a director, manager, trustee, or officer of a corporation organized under the laws of, or having its principal place of business within, this state" North Dakota has considered and rejected the corporate shield argument). The court in

Drayton stated that it should not impute the employer's contacts to the employee, but rather assess the employee's contacts on an individual basis. Id. citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).

Even if the Court were to find that the business website was fully interactive and that the business directed its advertising toward North Dakota residents, the Court would still find a lack of personal jurisdiction because the business website contacts are not synonymous with those of Robinson. Robinson has never personally availed herself of the privilege of conducting business in North Dakota and, therefore, has not availed herself of the protection of the laws. The Court finds that the business website does not weigh in favor of granting personal jurisdiction.

### b. INJURY EFFECT IN FORUM STATE

As an additional basis for personal jurisdiction, Boyko cites the "effects test" recognized by the United States Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). In Calder, a California entertainer brought a libel action against Florida residents who were writers and editors of the National Enquirer, a Florida-based weekly newspaper with a nationwide circulation. The Supreme Court held that California could assert jurisdiction over the non-resident defendants because the defendants' intentional actions were aimed at California, they knew the allegedly libelous articles "would have a potentially devastating impact" on the plaintiff, and they knew the "brunt of the harm" would be suffered in California. Based on those facts, the Supreme Court concluded the defendants could "reasonably anticipate being haled into court" in California. 465 U.S. 783, 790 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Eighth Circuit has recognized the "effects test" as articulated in <u>Calder v Jones</u>. <u>See</u> <u>General Electric Capital Corp. v. Grossman</u>, 991 F.2d 1376, 1387 (8th Cir. 1993); <u>Hicklin Engineering, Inc. v. Aidco, Inc.</u>, 959 F.2d 738, 739 (8th Cir. 1992); <u>Dakota Indus., Inc., v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1390-91 (8th Cir. 1991). However, the Eighth Circuit has used the "effects test" as merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. <u>See</u> <u>Hicklin Engineering, Inc. v. Aidco, Inc.</u>, 959 F.2d 738, 739 (8th Cir. 1992) (holding that although the defendants' alleged harmful activities may have harmed the plaintiff in the state of Iowa, "absent additional contacts, this effect alone will not be sufficient to bestow personal jurisdiction."); <u>Dakota Indus., Inc., v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1390-91 (8th Cir. 1991) (stating that "[i]n relying on <u>Calder</u>, we do not abandon the five-part test. . . . We simply note that <u>Calder</u> requires the consideration of additional factors when an intentional tort is alleged").

The actions that led to the allegations of wrongdoing in this case arose from activities that occurred in Colorado when Boyko lived in Colorado, with the exception of the arrest and extradition. Boyko states that he lived in Colorado where he attended Colorado State University and intended to obtain residency if and when he was accepted into the veterinary program. Robinson contacted the Sheriff's Department in Colorado to report that she believed Boyko was stalking her and acting in a manner that was threatening to her, her family, friends, and colleagues in Colorado. <u>See</u> Docket 6-1. After Robinson filed for a permanent restraining order in Colorado, the Douglas County Sheriff's Department continued to investigate Boyko and traveled to Fort Collins, Colorado to investigate the computer hacking charges. Robinson states that she was unaware whether the Sheriff Department's trip to Fort Collins was to arrest Boyko, to analyze his

computer, or to speak with him. See Docket 6-1. Only upon making the trip to Fort Collins, Colorado, did the Douglas County Sheriff's Department learn that Boyko had moved to North Dakota. The Sheriff's Department sought Boyko's extradition, but did not consult Robinson with regard to that process. It is undisputed that Robinson never spoke to Boyko or anyone else in North Dakota regarding this process.

Even if Robinson foresaw any injury, it was likely that she foresaw the effects would be felt in Colorado, the state where they had met in person, where Boyko attended school and resided, and where he had hoped to attend graduate school. In cases where tortious activity in one state supported a finding of jurisdiction in another, the courts have found that the defendants were aware that the brunt of the injury would be felt in the forum state. See, Findley v. River North Records, Inc., 148 F.3d 913, 916 (8th Cir. 1998) (stating that the Eighth Circuit has found that "the Supreme Court . . . approved an "effects" test that allows the assertion of personal jurisdiction over non-residents whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'"); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991) (finding the defendant must reasonably have anticipated being haled in to court because testimony indicated that [defendant's] actions were uniquely aimed at the forum state and the brunt of the injury would be felt there).

Boyko contends that Robinson knew the brunt of the injury would be felt in North Dakota. However, the record clearly reveals that Robinson did not know that Boyko had moved back to North Dakota until the Sheriff's Department visited Boyko's former residence in Fort Collins, Colorado, which was after she had filed her original claims against Boyko in criminal court. Boyko submitted documents which he contends demonstrate that Robinson pushed for his prosecution,

13

which resulted in the intentional tort allegations. However, these documents, which include Robinson's initial statement to the Sheriff's Office, a Victim's Impact Statement,[4] an affidavit for the arrest warrant, an investigation report, and an email to a detective, all occurred either through the District Attorney's Office, the Sheriff's Department, or before the investigators discovered Boyko had moved to North Dakota. See Docket 15-1, 2, 3, 4, 10. The Court finds that these submissions are not sufficient to support a finding of personal jurisdiction based on the effects test. Robinson's acts were not performed for the purpose of having their consequences felt in the forum state. Rather the acts that effected Boyko occurred due to third parties, both the Sheriff's Department and District Attorney, with the intent of having their effects felt in Colorado.

Boyko also contends that Robinson's allegations "naturally resulted" in extradition and prosecution and Robinson and the Colorado authorities benefitted from a "Fugitive From Justice" law in North Dakota that gave Colorado the authority to seek extradition and prosecute Boyko. See Docket 20. The Court finds that this argument is too attenuated to support a finding of personal jurisdiction. Robinson did not have the power to extradite Boyko to Colorado. The Colorado authorities arrested and extradited Boyko on their own initiative. Boyko has cited no case law nor is the Court aware of any case law that supports a finding that law enforcement extradition from the forum state would confer personal jurisdiction over the person who filed the original complaint in the receiving state.

---

[4] The document submitted to the Court is consistent with a Victim's Impact Statement and will be treated appropriately. However, the entire document has not been included.

### c. PERSONAL CONTACTS

The Eighth Circuit Court of Appeals has held that "contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002) (citing T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Assoc., 749 F.2d 523, 525 (8th Cir. 1984)); Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996) (holding that although defendant "sent numerous letters and faxes and made several telephone calls to Minnesota," "these contacts do not create a 'substantial connection' to Minnesota").

It is undisputed that the vast majority of contacts between Robinson and Boyko were via email which is analogous to both mail and phone calls. It is disputed as to whether Boyko was living in North Dakota while these contacts were made. However, even if he was, those emails would not be sufficient to confer personal jurisdiction. The only other contact between Boyko and Robinson occurred when the parties met in Colorado. The Court finds that the nature and quality of the contacts with North Dakota does not support the exercise of personal jurisdiction.

### 2. QUANTITY OF CONTACTS

Boyko contends that Robinson's contacts with him qualify as specific contacts. It is well-established that specific jurisdiction can arise from a single contact with the forum state. Fulton v. Chicago, Rock Island & P.R. Co., 481 F.2d 326, 334-36 (8th Cir. 1973). However, when specific jurisdiction is being alleged the quantity of contacts is not determinative. West Publishing Co. v. Stanley, No. Civ. 03-5832 (JRT/FLN), 2004 WL 73590, *4 (D.Minn. Jan. 7, 2004); (citing Marquette Nat'l Bank of Minneapolis v. Norris, 270 N.W.2d 290, 295 (Minn. 1978); McGee v. Int'l

Life Ins. Col., 355 U.S. 220, 223 (1957); Marshall v. Inn of Madeline Island, 610 N.W.2d 670, 674 (Minn. Ct. App. 2000)). Therefore, the Court is not concerned with the number of contacts made for purposes of whether specific jurisdiction exists.

Quantity is a consideration when general jurisdiction is alleged, especially when applying the Zippo test to determine jurisdiction. Lakin v. Prudential Securities, Inc., 348 F.3d 704, 712 (8th Cir. 2003). General jurisdiction arises with continuous and systematic contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984). Boyko contends that Robinson's business website should be used as a basis for general jurisdiction, but he has not presented any information regarding the quantity of contacts that the website has had with North Dakota residents, except for himself, nor does he address the issue of quantity. Robinson has indicated that neither she nor her business have had any North Dakota business contacts. See Docket 17-2. The Court finds that the quantity of contacts do not weigh in favor of exercising personal jurisdiction under general jurisdiction analysis.

### 3.    RELATION OF CONTACTS TO CAUSE OF ACTION

Robinson contends that she has no North Dakota contacts. Boyko argues that Robinson's contacts with North Dakota are predominately through her contacts with him, a North Dakota resident, and that each claim arises out of her contact with Boyko.

The record reveals that the contacts that led to the causes of action alleged in this lawsuit all occurred in Colorado. The claim for defamation is a claim arising out of statements made in Colorado. The malicious prosecution is a cause of action resulting from Boyko's prosecution for activities that occurred in Colorado. The conduct resulting in the intentional infliction of emotional

stress also logically stems from the charges and actions that occurred in Colorado, and the extradition and processes in Colorado. The only connection these causes of action have to North Dakota is that Boyko moved back to North Dakota, was extradited from North Dakota, and now lives in North Dakota. As previously noted, Robinson did not know Boyko had moved to North Dakota; in fact, she listed Boyko's address on the restraining order as Fort Collins, presumably his former Colorado address. See Docket 6-6. Further, Robinson stated that she did not demand, ask, or even encourage the Colorado authorities to extradite Boyko to Colorado, nor did she communicate with any person or entity in North Dakota regarding Boyko. See Docket 6-1. Therefore, the Court finds that this factor does not weigh in favor of exercising personal jurisdiction.

### 4.  INTEREST OF THE FORUM STATE

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 694 (8th Cir. 2003); Northrup King Co. v. Compania Productora Semillas Algodoneras, 51 F.3d 1383, 1388 (8th Cir. 1995); Aaron Ferer & Sons Co. v. American Compressed Steel Co., 564 F.2d 1206, 1210 n.5 (8th Cir. 1977). The interest of the forum state is the fourth factor to be considered for purposes of exercising personal jurisdiction.

It stands to reason that North Dakota has an interest in adjudicating these claims and providing a forum for its resident. See Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997) (quickly dispensing with this part of the test by assuming the forum state has an interest in providing a forum for its residents). Robinson concedes this point. See Docket 17-1. The Court finds that this factor weighs in favor of exercising personal jurisdiction.

### 5.     CONVENIENCE OF THE PARTIES

Both Boyko and Robinson acknowledge that litigation in either North Dakota or Colorado will necessarily inconvenience one party. See Docket 17-1, 20. The Eighth Circuit has recognized that a plaintiff is normally entitled to choose the forum in which to litigate a case. Northrup King Co. v. Compania Productora Semillas Algodoneras, 51 F.3d 1383, 1389 (8th Cir. 1995). The Court finds that this factor favors neither party under the circumstances.

Based on Robinson's minimal contacts with North Dakota and the totality of the circumstances, the Court expressly finds that exercising personal jurisdiction over Robinson would violate due process. See Northwest Airlines, Inc. v. Astraea Aviation Services, Inc., 111 F.3d 1386, 1390 (8th Cir. 1997). The exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. The Court finds it lacks personal jurisdiction over Robinson. Accordingly, the Court need not address the claims of insufficient service of process or failure to state a claim upon relief can be granted.

### III.    CONCLUSION

Based on the foregoing, the Defendant's motion to dismiss (Docket No. 5) is **GRANTED**. The motion to strike (Docket No. 23) is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 17th day of August, 2007.

/s/ Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court